| | |
|---|---|
| 1  CRAIG H. MISSAKIAN (CABN 125202)<br>   United States Attorney | **FILED** |
| 2 | |
| 3  JEFF MITCHELL (CABN 236225)<br>   Chief, Criminal Division | Feb 13 2026 |
| 4  MARISSA HARRIS (NYBN 4763025)<br>   Assistant United States Attorney | Mark B. Busby<br>CLERK, U.S. DISTRICT COURT |
| 5 | NORTHERN DISTRICT OF CALIFORNIA |
| 6     60 South Market Street, Suite 1200<br>       San Jose, California 95113<br>       Telephone: (408) 535-5061 | SAN JOSE |
| 7     FAX: (408) 535-5066<br>       marissa.harris@usdoj.gov | |

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. **CR 26-70136-MAG** |
| Plaintiff, | ) | NOTICE OF PROCEEDINGS ON OUT-OF-DISTRICT CRIMINAL CHARGES PURSUANT TO RULES 5(c)(2) AND (3) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |
| v. | ) | |
| ANDREW WARNER, | ) | |
| Defendant. | ) | |

Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on <u>February 13, 2026</u>, the above-named defendant was arrested pursuant to an arrest warrant (copy attached) issued upon an

☒ Indictment

☐ Information

☐ Criminal Complaint

☐ Other (describe) _____

pending in the <u>Southern District of New York</u>, Case Number <u>26-CRIM-0055</u>.

In that case (copy of indictment attached), the defendant is charged with a violation(s) of 18 U.S.C. §§ 2, 371, 1343; 15 U.S.C. §§ 78j(b) and 78ff; and 17 C.F.R. § 240.10b-5.

v. 8/29/2025

Description of Charges: <u>Conspiracy to Commit Securities and Wire Fraud, Securities Fraud, Wire Fraud</u>.

The maximum penalties are as follows:

<u>Count One: Conspiracy to Commit Securities and Wire Fraud (18 U.S.C. § 371)</u>

- Maximum Prison: 5 years
- Maximum Fine: The greater of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense
- Maximum Supervised Release: 3 years
- Special Assessment: $100

<u>Count Two: Securities Fraud (15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2)</u>

- Maximum Prison: 20 years
- Maximum Supervised Release: 3 years
- Maximum Fine: The greater of $5,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense
- Special Assessment: $100

<u>Count Three: Wire Fraud (18 U.S.C. §§ 1343 and 2)</u>

- Maximum Prison: 20 years
- Maximum Supervised Release: 3 years
- Maximum Fine: The greater of 250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense
- Special Assessment: $100

///

|   |   |
|---|---|
|   | Respectfully Submitted, |
|   | CRAIG H. MISSAKIAN |
|   | UNITED STATES ATTORNEY |
| Date: February 13, 2026 | _____/s/_____ |
|   | MARISSA HARRIS |
|   | Assistant United States Attorney |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW WARNER and<br>KISHORE VANGIPURAM,<br><br>Defendants. | **SEALED INDICTMENT**<br><br>26 Cr.<br><br>26 CRIM 055 |

### COUNT ONE
(Conspiracy to Commit Securities Fraud and Wire Fraud)

The Grand Jury charges:

1.  ANDREW WARNER and KISHORE VANGIPURAM, the defendants, schemed to deceive an investment firm into overpaying for Mobileum, Inc., a company of which they were senior executives, as part of a private equity transaction. To inflate Mobileum's apparent value, and to convey the illusion of robust growth and operational efficiency, WARNER, Mobileum's Chief Financial Officer, and VANGIPURAM, Mobileum's Chief of Delivery, falsified the company's financial metrics, including revenue and unbilled revenue. In the end, after receiving those artificial metrics, the investment firm (the "PE Firm") acquired Mobileum at an inflated enterprise value of $915 million, and WARNER and VANGIPURAM pocketed millions of dollars in personal proceeds tied to the deal.

2.  The defendants' scheme hinged on the fraudulent acceleration of revenue. Under the "percentage-of-completion" accounting method, Mobileum purported to recognize revenue over the life of a project in proportion to the work performed. Consequently, any inflation of hours worked, or reduction in estimated total effort, resulted in fraudulent recognition of revenue. ANDREW WARNER and KISHORE VANGIPURAM, the defendants, manipulated the revenue

recognized under this method by directing employees to transfer hours from projects where the hours were non-billable to projects where the hours were billable, to create the false appearance that billable work had been performed. They also directed employees to artificially reduce the "level of effort" for projects, effectively shrinking the total work required so that work already performed represented a higher percentage of the contract. By making projects appear significantly closer to completion than was factually accurate, the defendants manufactured millions of dollars in imaginary revenue.

3. The defendants' fraudulent revenue acceleration resulted in a substantial spike in "unbilled revenue"—income recognized on Mobileum's books but not yet invoiced to customers. Before the sale of Mobileum, when the PE Firm repeatedly inquired about Mobileum's high unbilled revenue as a red flag indicating poor cash conversion, ANDREW WARNER and KISHORE VANGIPURAM, the defendants, directed employees to create fictitious invoices for billing milestones that Mobileum never reached. To prevent discovery of the underlying fraud by Mobileum's clients, WARNER instructed that these invoices be processed internally to satisfy the PE Firm's scrutiny but strictly withheld from the customers themselves.

4. Ultimately, the PE Firm purchased Mobileum at an enterprise value of $915 million. Even after the sale, the defendants and employees acting at their direction continued their deceptive practices to prevent the PE Firm from discovering the true state of Mobileum's financial health. Indeed, after the sale, KISHORE VANGIPURAM, the defendant, cautioned a subordinate not to "send emails" about their invoicing because it would land them in a "lot of trouble." The scheme unraveled, however, after the PE Firm discovered the defendants' fraud, Mobileum's true financial condition was disclosed, and the company—which the defendants had represented as a nearly billion-dollar enterprise—filed for bankruptcy.

## Mobileum's Business and the Sale of the Company

5. Mobileum was a Silicon Valley-based company that provided data analytics and network solutions to telecommunications firms around the globe. In 2016, Mobileum was acquired by a private equity firm that sought to increase the company's value by acquiring smaller telecommunications and analytics firms and consolidating them with Mobileum. Through this "roll up" strategy, Mobileum established worldwide operations, including a substantial presence in the United States, Canada, Portugal, and India.

6. By in or about 2020 and 2021, with the assistance of an investment bank based in Manhattan, New York, Mobileum's owners initiated a process to sell the company. During that process, Mobileum was marketed to potential investors as a high-growth, high-margin software business. Mobileum's initial outreach to buyers proved unsuccessful, however. Several sophisticated investors showed little interest in Mobileum, and others considered offers significantly below Mobileum's owners' expectations. One potential buyer explored a deal, but the sale did not go forward because Mobileum's management was unable or unwilling to provide the potential buyer with adequate financial information.

7. After these unsuccessful efforts to sell the company, Mobileum executives, including ANDREW WARNER and KISHORE VANGIPURAM, the defendants, worked to shore up Mobileum's financial reporting in anticipation of a renewed effort to find a buyer. Internally, however, WARNER acknowledged that the financial reports generated by these efforts were outcome-driven fictions to entice a prospective buyer. In June 2021, WARNER instructed a Mobileum employee preparing a financial forecast for Mobileum's investment bank, "The reality is we have a target number" from Mobileum's founder and Chief Executive Officer, and "then build the support that makes the number seem reasonable, but we can not say that!!"

### The Fraudulent Sale of Mobileum to the PE Firm

8.  In or about September 2021, Mobileum targeted the PE Firm as a potential buyer, providing a memorandum that projected $247 million in annual revenue and $84 million in adjusted earnings. In December 2021, following a diligence process in which Mobileum's executives made numerous representations about the firm's financial condition, revenue, unbilled revenue, and business prospects, the PE Firm agreed to acquire a controlling interest in Mobileum at an enterprise valuation of $915 million. The acquisition closed in March 2022 and resulted in ANDREW WARNER, the defendant, receiving approximately $5.2 million in proceeds (including, among other things, rollover shares and approximately $2.5 million in cash, cash held in escrow, and bonus) and KISHORE VANGIPURAM, the defendant, receiving approximately $5.5 million in proceeds (including, among other things, rollover shares and approximately $2 million in cash, cash held in escrow, and bonus).

9.  To hit a $247 million annual revenue target tied to the sale, ANDREW WARNER and KISHORE VANGIPURAM, the defendants, manipulated Mobileum's records to accelerate revenue under the percentage-of-completion accounting method in two principal ways. *First*, VANGIPURAM, with WARNER's approval, directed employees to transfer hundreds of unbillable hours spent on customer satisfaction efforts to billable client projects, to create the appearance that more billable work had been completed. *Second*, WARNER and VANGIPURAM directed employees to artificially reduce the expected level-of-effort estimates for certain projects to create the appearance that a greater percentage of the work already had been done and that those projects were closer to completion than they were in reality. Through those two methods, WARNER and VANGIPURAM manipulated the percentages of completion for projects, effectively increasing the numerator (that is, the hours worked on a project), decreasing the

denominator (that is, the hours budgeted for a project), or both. By making it appear that projects had a higher percentage of completion, Mobileum was able to recognize revenue that it otherwise would not have recognized, fraudulently inflating the company's financial performance while it pursued a sale to the PE Firm.

10.     ANDREW WARNER and KISHORE VANGIPURAM, the defendants, knew the stakes of this deception. In private correspondence, VANGIPURAM emphasized the importance of reaching Mobileum's $247 million revenue projection to the successful sale of the company and to the compensation of Mobileum executives like himself. In or about December 2021, when a subordinate noted that Mobileum stood approximately $15 million short of the $247 million revenue target, VANGIPURAM reacted sharply, stating that falling short would "wipe[] out" the executive team's bonuses and ensure that "the company will not be sold."

*Moving Nonbillable Hours to Billable Projects to Accelerate Revenue*

11.     A primary method of the fraud involved a timesheet shell game, in which ANDREW WARNER and KISHORE VANGIPURAM, the defendants, reclassified internal, non-billable labor as billable client work to manufacture the appearance of progress on project milestones. The defendants used one Mobileum client, Kibott SARL ("Kibott"), a purported Luxembourg-based technology startup, as a key vehicle for this type of fraudulent revenue creation. In or about July 2021, WARNER executed a contract with Kibott for 660,000 euros (then equivalent to approximately $783,000). Within months, the defendants repeatedly expanded the Kibott contract to 16 million euros (then equivalent to approximately $18.6 million)—not to reflect a surge in actual work, but to create a repository for fraudulent revenue. When employees questioned the aggressive billing of Kibott, WARNER instructed them to "[t]hink of this as a blank canvas" to be used "to maximize revenue."

5

12. By November 2021, Mobileum faced a $7.3 million revenue gap against its $247 million target. To bridge this gap, ANDREW WARNER, the defendant, solicited a "favor" from Kibott: permission for Mobileum to "invoice some more $$" on the understanding that Kibott would not actually have to pay. This allowed the defendants to fraudulently recognize millions of dollars of revenue just before the PE Firm agreed to purchase Mobileum in December 2021. To provide a veneer of legitimacy for these invoices, KISHORE VANGIPURAM, the defendant, directed the movement of hundreds of internal, nonbillable "Customer Satisfaction" hours from unrelated projects to the billable Kibott account.

13. The scale of the discrepancy between what was invoiced and what was actually paid was huge. As part of this scheme, between September 2021 and July 2022, ANDREW WARNER and KISHORE VANGIPURAM, the defendants, caused Mobileum to invoice Kibott nearly 12 million euros. In reality, Kibott paid Mobileum only approximately 40,000 euros during the entire period. By recharacterizing internal overhead as billable project progress, the defendants created the illusion of growth to deceive the PE Firm.

*Accelerating Revenue by Artificially Reducing the "Level of Effort"*

14. ANDREW WARNER and KISHORE VANGIPURAM, the defendants, further manipulated Mobileum's financials by artificially reducing the expected "Level of Effort" or "LOE" on certain projects. The LOE was supposed to represent the total estimated hours required to complete a project. Because Mobileum recognized revenue based on the amount of work completed as a fraction of the total amount of work required, reducing the LOE altered a given project's percentage of completion. By reducing the LOE, the defendants were able to create the false appearance that a greater percentage of work had been completed and thereby accelerate the recognition of revenue.

15. In or about October 2021, the defendants slashed by half the estimated workdays required for several projects. When another Mobileum executive warned that this would be a "critical item in [Mobileum's] upcoming audit," ANDREW WARNER, the defendant, ordered a team of Mobileum employees to "pull together an explanation" for the auditors. He also privately suggested to KISHORE VANGIPURAM, the defendant, that they "pull together a story" to justify the sudden shift in the internal assessments of these projects and claim "[s]omething like—management has conducted a detailed review of the efforts needed to complete this project and based upon this analysis has adjusted accordingly."

*Fraudulently Reducing Unbillable Revenue*

16. Throughout the sale diligence period of approximately September 2021 to December 2021, the PE Firm expressed concern to Mobileum about its large and growing "unbilled revenue"—income that the company had recognized for accounting purposes but had not yet invoiced to customers. From a business valuation perspective, high or rising unbilled revenue can be a red flag because it may signal cash flow constraints or operational inefficiencies, such as a failure to adequately convert labor into income. ANDREW WARNER, the defendant, admitted internally that a call with the PE Firm to discuss the unbilled revenue was "very high risk" for the company's sale.

17. The PE Firm's simultaneous focus on Mobileum's revenue and its unbilled revenue created a conundrum for ANDREW WARNER and KISHORE VANGIPURAM, the defendants. The revenue acceleration scheme naturally produced unbilled revenue, as Mobileum booked revenue without regard to whether it had billed, or even could bill, customers for the work it performed. At the same time, the defendants could not deploy the ordinary solution to high unbilled revenue—sending invoices—because Mobileum's customers would recognize that Mobileum had

not performed the work reflected in the bill. WARNER and VANGIPURAM solved this problem through additional deception: by directing the creation of sham invoices while delaying transmittal of those invoices to customers. Among other things, at the defendants' instruction, another Mobileum executive told employees to prepare backdated invoices and, if there was no identifiable billing milestone upon which to base the invoice, to "use a generic description like 'Interim Milestone' or something of that nature." These fraudulent invoicing practices permitted Mobileum to report to the PE Firm that "unbilled" revenue had been converted to "billed" revenue, without contemporaneously billing Mobileum's customers. As a result, by in or about December 2021, Mobileum had reduced its primary source of purportedly unbilled revenue from $26.5 million to $24.4 million and told the PE Firm that unbilled revenue was "trending down." Internally, Mobileum's then-Chief Executive Officer declared that the company's reduction of unbilled revenue was "game, set and match" for closing the sale of the company to the PE Firm.

### The Defendants Continued the Fraud After the Sale

18. After the PE Firm completed its purchase of Mobileum on or about March 1, 2022, ANDREW WARNER and KISHORE VANGIPURAM, the defendants, continued their accounting fraud scheme to protect their million-dollar payouts that came with the company's sale. When April 2022 revenue fell $5 million short of targets, VANGIPURAM again ordered his team to move hours from non-billable projects to the billable Kibott project to fraudulently manufacture more than $4 million of revenue that quarter. VANGIPURAM's team was concerned that recognizing all of the revenue in Kibott all at once was risky because "[a]uditors will catch it for sure," and VANGIPURAM agreed to "spread" the revenue recognition over multiple months. Recognizing the perils of this paper trail, VANGIPURAM warned a subordinate, "dont send emails detailing things out … will land you in lot of trouble."

19. After ANDREW WARNER, the defendant, cautioned KISHORE VANGIPURAM, the defendant, and others that the spike in work for Kibott would draw the attention of Mobileum's auditors, VANGIPURAM told a subordinate that WARNER wanted them to have a "credible explanation" on record. That "credible explanation," as circulated by VANGIPURAM's subordinate, involved "pull[ing] resources from other projects and deploy[ing] them on Kibbot." Despite knowing that the hours were simply moved from non-billable internal codes to Kibott, WARNER approved the fake rationales, telling his staff, "At least this makes a bit more sense[.] Lets go ahead and update."

20. ANDREW WARNER, the defendant, left Mobileum as an employee in or about October 2022 but remained a consultant until in or about April 2023. KISHORE VANGIPURAM, the defendant, resigned from Mobileum in or about May 2023. The cycle of falsification in which the defendants participated sustained the illusion of solvency until 2024. When the scheme finally unraveled and Mobileum's true cash flow was revealed, including through the reporting of a whistleblower who came forward to the PE Firm, Mobileum was forced into bankruptcy.

Statutory Allegations

21. From at least in or about September 2021, up through and including at least in or about May 2023, in the Southern District of New York and elsewhere, ANDREW WARNER and KISHORE VANGIPURAM, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit: (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) wire fraud, in violation of Title 18, United States Code, Section 1343.

22. It was a part and an object of the conspiracy that ANDREW WARNER and KISHORE VANGIPURAM, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

23. It was further a part and an object of the conspiracy that ANDREW WARNER and KISHORE VANGIPURAM, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

<u>Overt Acts</u>

24. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

      a.     In or about December 2021, ANDREW WARNER, the defendant, asked Kibott to provide a "favor" by letting Mobileum invoice more money to the Kibott project without requiring Kibott to pay at that time.

      b.     In or about December 2021, KISHORE VANGIPURAM, the defendant, instructed Mobileum employees to generate revenue in the Kibott project by moving hours from other projects to Kibott.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The Grand Jury further charges:

25.    The allegations contained in paragraphs 1 through 20 of this Indictment are repeated and realleged as if fully set forth herein.

26.    From at least in or about September 2021, up through and including at least in or about May 2023, in the Southern District of New York and elsewhere, ANDREW WARNER and KISHORE VANGIPURAM, the defendants, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice and course of business which operated and would operate as a fraud and deceit upon a person, to wit, WARNER and VANGIPURAM engaged in a scheme to inflate Mobileum's key financial metrics in connection

11

with the sale of a majority of Mobileum's equity to the PE Firm, including by causing emails conveying false and fraudulent information to be transmitted to and from Manhattan, New York.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNT THREE
### (Wire Fraud)

The Grand Jury further charges:

27. The allegations contained in paragraphs 1 through 20 of this Indictment are repeated and realleged as if fully set forth herein.

28. From at least in or about September 2021, up through and including at least in or about May 2023, in the Southern District of New York and elsewhere, ANDREW WARNER and KISHORE VANGIPURAM, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, WARNER and VANGIPURAM engaged in a scheme to inflate Mobileum's key financial metrics in connection with the sale of a majority of Mobileum's equity to the PE Firm, including by causing emails conveying false and fraudulent information to be transmitted to and from Manhattan, New York, for the purpose of obtaining money from the PE Firm.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

29. As a result of committing the offenses alleged in Counts One through Three of this Indictment, ANDREW WARNER and KISHORE VANGIPURAM, the defendants, shall forfeit

to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

30. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

_Jay Clayton_
JAY CLAYTON
United States Attorney

Mod AO 442 (09/13) Arrest Warrant    AUSA Name & Telno:  Peter Davis, Alexander Li, Samuel Rothschild, Tel: 212-637-2468/-2265

## UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | |
|---|---|
| United States of America<br>v.<br>Andrew Warner<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.  26 Cr.<br><br>26 CRIM 0 5 5 |

### ARREST WARRANT

To:     Any authorized law enforcement officer

   **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   Andrew Warner                                                                                                          ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment        ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition       ☐ Supervised Release Violation Petition     ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

   18 U.S.C. § 371 (Conspiracy to Commit Securities Fraud and Wire Fraud)
   15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5; and 18 U.S.C. § 2 (Securities Fraud)
   18 U.S.C. §§ 1343 and 2 (Wire Fraud)

Date:     02/10/2026              
                                            *Issuing officer's signature*

                                            **Tammi M. Hellwig**

City and state:   New York, NY                                            
                                            *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____<br>at *(city and state)* _____ .<br><br>Date: _____       _____<br>                                            *Arresting officer's signature*<br><br>                                            _____<br>                                            *Printed name and title* |